**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10956

————————————

LASHONDA PEEPLES,

*Plaintiff-Appellant,*

*versus*

NATIONAL DATA RESEARCH, INC.,
d.b.a. Integrascan,

*Defendant-Appellee,*

BACKGROUND INFORMATION GROUP,
LLC,
d.b.a. Integrascan, et al.,

*Defendant.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01764-SCJ

————————————

Before JORDAN, JILL PRYOR, and HULL, Circuit Judges.

PER CURIAM:

Lashonda Peeples disputed the inclusion of an expunged criminal conviction in a background report compiled by National Data Research in support of her application for a pre-medical program.  After the report was corrected to reflect that the conviction had been expunged, Ms. Peeples challenged the inclusion of that expungement notation, which NDR refused to further modify.  Ms. Peeples asserted that NDR's failure to ensure the accuracy of the information in her background report, and failure to correct the information further, violated the Fair Credit Reporting Act.

The district court granted summary judgment in favor of NDR, and Ms. Peeples now appeals.  Because Ms. Peeples cannot establish Article III standing, we may not reach her FCRA claims.  We vacate the judgment in favor of NDR, dismiss the appeal, and remand for the district court to dismiss the action without prejudice for lack of subject-matter jurisdiction.

**I**

In 2021, Ms. Peeples applied to a pre-medical program at the American International College of Arts and Sciences – Antigua ("AICASA") for which prospective students had to submit a criminal background report.  AICASA required that the background reports be prepared by NDR, a consumer reporting agency.  NDR, upon request by an individual, generates background reports that it transmits directly to the requesting individual for her use.  Ms. Peeples received a background report from NDR that she believed

was inaccurate because it disclosed a record of a criminal offense in South Carolina that had since been expunged.

After Ms. Peeples challenged the representation of the offense in her file as inaccurate, NDR updated the background report to reflect that the offence had been expunged with a notation. Ms. Peeples then contested the accuracy of the modified report because South Carolina state law provides that an expunged record becomes "nonpublic" and can only be accessed by "those authorized law or court officials who need to know" the information in the record, and a criminal background report only includes those records that are public because nonpublic records are confidential. *See* S.C. Code § 22-5-910(D). NDR declined to update the background report again, because in its view the report was accurate as to the existence of a criminal offense and its subsequent expungement.

Ms. Peeples had, at this point, enrolled in the AICASA premedical program for one semester and her continued participation was contingent upon the submission of a complete background report. She decided against submitting it, fearing that the expungement notation would bar her from enrolling in the program full-time.

On July 13, 2022, Ms. Peeples brought a Fair Credit Reporting Act claim against NDR. She alleged that NDR's background report violated 15 U.S.C. § 1681e because NDR failed to "follow reasonable procedures to ensure the maximum possible accuracy of the information," and 15 U.S.C. § 1681i because NDR failed to "conduct a reasonable reinvestigation, correct the disputed

information, and maintain reasonable procedures to prevent the reappearance of the inaccurate information."

The district court adopted the magistrate judge's report and recommendation that NDR was entitled to summary judgment on all of Ms. Peeples' claims. Because it was undisputed that the report was communicated only to Ms. Peeples, as opposed to a third party, the court concluded that Ms. Peeples could not succeed on her § 1681e claim. The court also determined that the inclusion of Ms. Peeples' record of conviction, along with an expungement notation, in the report did not render the report inaccurate under § 1681i because it ultimately was an accurate recitation of her criminal history.

On appeal, Ms. Peeples argues that the district court misinterpreted both FCRA provisions in reaching its conclusions. For the reasons discussed below, we may not evaluate the merits of these arguments because we conclude that Ms. Peeples lacks Article III standing.

## II

We recently held in *Nelson v. Experian Information Solutions, Inc.*, 144 F.4th 1350 (11th Cir. 2025), an FCRA case, that a plaintiff could not demonstrate injury to establish Article III standing solely by "spending money and time attempting to correct errors on a credit report that has not been published to a third party or otherwise affected [her.]" *Id.* at 1352. In that case, Ms. Nelson brought a FCRA claim under 15 U.S.C. § 1681i(a)(1)(A) challenging a credit reporting agency's alleged failure to "conduct a reasonable

reinvestigation" upon notification of inaccurate information in her consumer report. *See* 144 F.4th at 1353. She alleged harm in two ways: she "spent time and money to correct information on her credit report" and the inaccuracy "increase[d] her risk of identity theft" in the future. *See id.* at 1354.

We concluded that Ms. Nelson could not show concrete harm, independent of an alleged statutory violation, or substantial risk of harm flowing from the alleged statutory violation, to establish injury-in-fact for standing purposes. *See id.* at 1352. First, the time and money Ms. Nelson spent trying to correct the error could not establish injury-in-fact unless those efforts responded to, or attempted to fix, an independent concrete harm. *See id.* at 1354–55 (reasoning that the expenditure of time and money to correct a statutory violation does not establish standing unless it corrects an error "that itself caused a concrete harm") (emphasis removed). Second, Ms. Nelson's theory of standing based on a threat of future identity theft failed because it was too speculative—it depended on the credit reporting agency sending incorrect information to a third party, which would then act and send an offer to an incorrect location, after which an intervening actor would use that information to steal her identity. *See id.* at 1356–57. In order for a risk of future harm to sufficiently establish injury, a plaintiff must show that "the harm is actual or imminent." *Id.* at 1357. The "chain-of-events" Ms. Nelson asserted to establish standing were too attenuated and speculative to satisfy the injury-in-fact requirement. *See id.*

We heard oral argument in this case prior to our decision in *Nelson*. So, at our request, the parties filed supplemental briefs on Ms. Peeples' standing in light of *Nelson*. Having reviewed the briefing, we now conclude that Ms. Peeples lacks Article III standing because she cannot show that she suffered concrete injury or faced a substantial risk of harm from the alleged FCRA violations.

Ms. Peeples contends that her concrete injury is that "she had to delay her admission to AICASA because the [r]eport was inaccurate, NDR refused to correct it, and AICASA would not accept a criminal background report from any other source." In her supplemental brief, Ms. Peeples also asserts that she can establish standing because she "suffered emotional distress injuries because of her lost opportunity to obtain academic credentials necessary for her to realize her dream of attending medical school."

But, as we explained in *Nelson*, a plaintiff cannot establish standing by self-imposing her injury. *See id.* at 1354. Here, Ms. Peeples made the ultimate decision not to apply for further medical education because of her belief that AICASA "might not permit her to enroll if it discovered that she had been convicted of [the] offense[.]" Appellant's Br. at 7. Ms. Peeples' refusal to submit the modified report resulted in her leaving the program because she believed "she could not use the [r]eport in support of her application." *Id.* at 8. Ms. Peeples' own actions therefore caused her not to continue her medical education, and under *Nelson* this self-imposed injury cannot meet the injury-in-fact requirement of standing. *See Nelson*, 144 F.4th at 1354. Ms. Peeples' emotional suffering

related to this "lost opportunity" likewise stemmed from her own decision not to complete her application and cannot create standing. *See id.*

Additionally, Ms. Peeples made the decision not to submit the original or modified background report to AICASA based on her own belief that AICASA would make a certain decision upon receiving and reviewing the report. Her decision, which led to her asserted harms, both the loss of enrollment and emotional suffering, was based on a "speculative chain of possibilities" that AICASA would, upon receipt of her modified background report with notations regarding her conviction and its subsequent expungement, deny her further enrollment in her program. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). This "speculative series of events" was not "certainly impending to constitute injury in fact" because no decision had been made by AICASA as to Ms. Peeples' enrollment based on the modified background report. *See Nelson*, 144 F.4th at 1357. Moreover, AICASA had given no indication as to what decision it would make upon reviewing the report, and whether that decision would have adversely affected Ms. Peeples.

Ms. Peeples claims no other types of concrete injury, and, under *Nelson*, her allegations are insufficient to establish standing. Because Ms. Peeples lacks Article III standing, we may not reach the merits of her FCRA claims on appeal.

## IV

For these reasons, we dismiss the appeal, vacate the district court's judgment, and remand with instructions that the district

court dismiss the complaint without prejudice for lack of subject-matter jurisdiction.

**APPEAL DISMISSED: VACATED AND REMANDED WITH INSTRUCTIONS.**